UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| OLDCASTLE PRECAST, INC., d/b/a )<br>Cloud Concrete Products, Inc.  )<br>                               )   Civil Action No. 5:07-81-JMH<br>     Plaintiff,                )<br>                               )<br>v.                             )<br>                               )<br>SUNESIS CONSTRUCTION CO.,       )   **MEMORANDUM OPINION AND ORDER**<br>                               )<br>     Defendants.               )<br>                               ) | |

**          \*\*     \*\*     \*\*     \*\*     \*\***

Before the Court is the defendant's motion to dismiss or to stay this case pending the outcome of a parallel case pending before the Butler County, Ohio Court of Common Pleas [Record No. 7].  The parties have filed their briefs, and this matter is ripe for review.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Oldcastle Precast, Inc. ("Oldcastle") is a Washington corporation, with its principal place of business located in Auburn, Washington.  Oldcastle is licensed to do business in Ohio.  In 1999, Oldcastle acquired Cloud Concrete Products, Inc. ("Cloud"), a corporation that had been doing business in Lexington, Kentucky since 1928.  Oldcastle currently does business in Kentucky under Cloud's name ("Oldcastle/Cloud" or "the Cloud division").  The Cloud division's main manufacturing and office facility is located in Lexington.

1

Defendant Sunesis Construction Company ("Sunesis") is an Ohio corporation doing business in Butler County, Ohio.  Sunesis is a general contractor that primarily does public work involving sewers, roads, buildings, and bridges.  In 2005, Butler County retained Sunesis as the general contractor on the Trenton Lift Station Project ("the Trenton Project" or "the Project") for the construction of a sewer and waste management plant in Trenton, Ohio.

The relationship between Sunesis and Oldcastle/Cloud predates the Trenton Project.  Shortly after Oldcastle's acquisition of Cloud in 1999, Sunesis began purchasing precast items from the Cloud division at its Lexington, Kentucky facility.  In 2004, Sunesis and Oldcastle/Cloud entered into a contract titled "Application and Agreement for Credit and Standard Terms and Conditions of Sale" ("the 2004 agreement") that purportedly provided standard terms and conditions for future transactions between the parties.  The 2004 agreement contained the following choice-of-law and forum selection provision:

> This CONTRACT and all the rights and obligations of the parties thereunder, shall be governed by the laws of the state where the SELLER'S place of business is, at which this contract was first prepared, and the Uniform Commercial Code.  The exclusive and sole venue for the resolution of any disputes which arise under this Contract shall be within a court of competent jurisdiction within the county and state of SELLER'S place of business, from which this Contract was first prepared or, at the option of SELLER, the county in which the materials are used.

Although the "Seller," as set forth in the 2004 agreement, is Oldcastle, Oldcastle claims, and Sunesis does not dispute, that the place of business relevant to the provision is Lexington, Kentucky.

This case arises from a 2005 purchase order for certain precast products, including two wetwells and a splitter vault, to be used at the Trenton Project. Sunesis initially contacted Oldcastle/Cloud at its Lexington facility and requested that Oldcastle/Cloud bid on the Project. After reviewing plans provided by Sunesis, Oldcastle/Cloud submitted a quote to Sunesis. The quote included the following language: "This proposal is based on standard terms and conditions." Sunesis incorporated Oldcastle/Cloud's quote into the bid it submitted on the Project. After Sunesis was awarded the Trenton Project, it forwarded an oral purchase order number to Oldcastle/Cloud.

Oldcastle/Cloud manufactured and designed all precast products for the Project at its Lexington facility. After it finished production in May 2005, Oldcastle/Cloud stored the products at the Lexington facility for approximately six weeks before Sunesis orally requested their delivery. Oldcastle/Cloud then shipped the products from Lexington to Ohio.

The wetwells and splitter vault leaked during testing. According to Sunesis, Oldcastle/Cloud authorized Sunesis to retain a local third party to repair the wetwells and splitter vault. According to Oldcastle, after its representative met with the

3

Sunesis Project Manager at the Trenton Project, it informed Sunesis that the Cloud division was not responsible for repairs because Sunesis used an improper testing method on the products.

After negotiations failed, Sunesis filed a breach of contract claim against Oldcastle in the Butler County, Ohio Court of Common Pleas on March 15, 2007. *Sunesis Construction Co. v. Oldcastle Precast, Inc.*, Civil Action No. 2007-03-1098. On March 20, 2007, Oldcastle filed this action. Although it was not served with the state court complaint until March 26, 2007, Oldcastle apparently knew of the state court action when it filed this case.

Oldcastle filed a motion to dismiss based on the forum selection clause in the Butler County Court of Common Pleas on May 2, 2007. The state court was scheduled to hear the motion on May 25, 2007. To this Court's knowledge, the state court has not yet ruled on whether the forum selection and choice-of-law provisions are enforceable under Ohio law.

## II. ABSTENTION

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). However, in exceptional circumstances, a federal court may decide not to proceed with a federal case and instead defer to a parallel state court proceeding out of consideration for "'[wise] judicial administration, giving regard to conservation of judicial resources

4

and comprehensive disposition of litigation.'" *Id.* at 817 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183 (1952)).

In deciding whether to abstain in favor of a state court case, the Court must first determine whether a parallel state court proceeding is currently pending in the state court. *Romine v. Compuserve Corp.*, 160 F.3d 337, 339-40 (6th Cir. 1998). The state court proceedings need not be identical, merely "substantially similar." *Id.* at 340. There is also not a requirement that the parties in the state court proceedings be identical to those in the federal case. *Heitmanis v. Austin*, 899 F.2d 521, 528 (6th Cir. 1990).

After determining that a state court proceeding and federal court proceeding are parallel, courts consider the following factors before invoking the doctrine of judicial economy: (1) whether either court has assumed jurisdiction over any *res* or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; and (5) whether federal or state law provides the basis for the decision in the case. *Colorado River*, 424 U.S. at 818-19; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 (1983). Courts also consider (6) the adequacy of the state-court action to protect the federal plaintiff's rights; (7) the relative progress of the state and

5

federal proceedings; and (8) the presence or absence of concurrent jurisdiction.  *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22, 26. "[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* at 16.

**III. ANALYSIS**

Before the Court weighs the above factors, it must consider the effect of the choice-of-law provision in the 2004 agreement. If the choice-of-law provision is valid and enforceable under Kentucky law, *see Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000) (holding that the conflict of law rules of the forum state govern the determination of whether to enforce a choice-of-law provision), then Kentucky contract law applies to this case.

A.   The Choice-of-law and Forum Selection Provisions are Part of the Parties' Contract.

Sunesis argues that the Standard Terms and Conditions set forth in the 2004 agreement do not apply to this case because the Trenton Project purchase order was a separate contract.  However, the quote submitted by Cloud explicitly stated, "This proposal is based on standard terms and conditions."  Since the only "standard terms and conditions" on record are those contained in the 2004 agreement, this Court finds that Cloud's bid incorporated those

6

terms.  By accepting Cloud's bid, Sunesis again accepted the terms and conditions, including the choice-of-law and forum selection provisions.

B.   The Choice-of-law Provision is Enforceable Under Kentucky Law.

Under § 187 of the Restatement (Second) of Conflict of Laws, a contractual choice-of-law provision "should be honored unless (1) 'the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice,' or (2) 'application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest.'" *Wallace Hardware Co.*, 223 F.3d at 398.  The Sixth Circuit has held that, "in a standard commercial breach-of-contract case . . . , the Kentucky courts would choose to adopt § 187 of the Restatement as their analytical framework for addressing a contractual choice-of-law clause." *Id.* at 397.

Kentucky has a substantial relationship to both the parties and the transaction in this case.  The Cloud division is located, and the allegedly defective concrete products were manufactured and stored, in Lexington, Kentucky.  In addition, Sunesis contacted Cloud in Lexington to request a bid on the Trenton Project.

Whether Ohio has a fundamental policy against enforcement of a choice-of-law clause in a case like this is a closer question. Under Ohio law,

7

> Any provision of a construction contract, agreement, understanding, or specification or other document or documentation that is made part of a construction contract, subcontract, agreement, or understanding for an improvement, or portion thereof, to real estate in this state that makes the construction contract or subcontract, agreement, or other understanding subject to the laws of another state is void and unenforceable as against public policy.

Ohio Rev. Code § 4113.62(D)(1).  This statute reflects an Ohio policy against choice-of-law provisions in construction contracts and subcontracts involving Ohio real estate.  However, this policy does not rise to the level of a fundamental public policy under the facts of this case.

Determining whether a statute vindicates a fundamental public policy depends on the particular circumstances of each case. *Wallace Hardware Co.*, 223 F.3d at 400 n. 16.  While the quote in this case was included in a bid for a construction project in Ohio, the products were manufactured entirely in Kentucky and were stored in Kentucky for approximately six weeks.  Although the contract may technically fall within Ohio's policy against choice-of-law provisions, the policy does not seem fundamental in this case, where most of the work was done outside of Ohio.

Even if Ohio intended, as a fundamental policy, to apply Ohio law to all construction contracts and sub-contracts involving Ohio real estate, Ohio does not have a materially greater interest in this case than Kentucky.  The plaintiff is from Kentucky, and, with the exception of testing, the material work on the contract was

8

performed in Kentucky.  The Court also observes that Kentucky has a strong public policy in favor of upholding parties' bargains in all but exceptional circumstances.  *See Zeitz v. Foley*, 264 S.W.2d 267, 268 (Ky. 1954) ("[C]ontracts voluntarily made between competent persons are not to be set aside lightly.").

For the foregoing reasons, this Court finds that Kentucky courts would apply the parties' choice-of-law provision. Therefore, Kentucky law applies to this case.

C.    The *Colorado River* Doctrine Does Not Support Abstention.

Oldcastle does not dispute that this case and the Butler County, Ohio case are parallel proceedings.  However, the factors articulated in *Colorado River* and in *Moses H. Cone Mem'l Hosp.* do not weigh in favor of dismissing or staying this case.

*1.  Whether the state court has assumed jurisdiction over any res or property.*

There is no property or *res* at issue in this case.  Therefore, this factor does not weigh in favor of abstention.

*2.  Whether the federal forum is less convenient to the parties.*

This factor weighs against the exercise of abstention because Kentucky is the forum selected in the parties' forum selection clause.  In Kentucky, courts consider the following four factors in determining whether a forum selection clause is enforceable:

> (1)  whether the clause was freely negotiated;
> (2)  whether the specific forum is a seriously inconvenient place for trial;
> (3)  whether enforcement would contravene a strong public policy of the forum in which the suit is brought; and

(4)  whether Kentucky has more than a minimal interest in the lawsuit.

*Wilder v. Absorption Corp.*, 107 S.W.3d 181, 183 (Ky. 2003).

Like choice-of-law provisions, forum selection clauses contained in construction contracts and subcontracts for the improvement of Ohio real estate are unenforceable under Ohio law. Ohio Rev. Code § 4113.62(D)(2).  Since Ohio has declared these provisions void and unenforceable as a matter of public policy, the analysis plays out largely like the choice-of-law analysis.  In addition to the factors discussed in the choice-of-law analysis, the Court also notes that the precast products were manufactured in Lexington; that the Cloud employees who designed, manufactured, and tested the products live in the Lexington area; and that an examination of the testing facility will necessarily occur in Lexington.  Therefore, even though Ohio has a stated public policy against enforcement of forum selection clauses in contracts such as this, this Court finds that the *Wilder* factors weigh in favor of enforcing the provision.

3.  *Avoidance of piecemeal litigation.*

The consideration that was "paramount in *Colorado River* itself" was the "danger of piecemeal litigation." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 19.  "Piecemeal litigation occurs when different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results." *Romine*, 160 F.3d at 341.  Of all the factors, this

10

weighs most heavily in favor of abstention.  If the state court decides that the forum selection and choice-of-law provisions are invalid and/or unenforceable, there is a very real risk that this case will be adjudicated in state and federal court under both Ohio and Kentucky law.

*4.   The order in which jurisdiction was obtained.*

"[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21.  Since both this case and the state court action are at basically the same stage, this factor weighs against exercising abstention.  The Court also disagrees with the characterization of this lawsuit as "a reactive suit by a defendant attempting to force abstention in order to effect a forum shopping ploy," *see Romine*, 160 F.3d at 342, since the plaintiff is merely complying with the terms of a valid choice-of-law and forum selection provision.

*5.   Whether the source of governing law is state or federal.*

This is a contract claim and therefore governed by state law. However, under the choice-of-law and forum selection provision, the appropriate state law is that of Kentucky.  Sunesis claims that this is "immaterial," and that the only real issue is whether federal law issues exist.  This is not true.  The presence of state-law issues only weighs in favor of surrender "in some rare circumstances." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 26.  Since

11

a federal court sitting in Kentucky is at least equally as well-suited to apply Kentucky law as an Ohio state court, this is not one of those rare circumstances.

*6.   The adequacy of the state court action to protect the federal plaintiff's rights.*

This factor weighs against abstention.  As discussed earlier, the Ohio court may choose to apply Ohio law to this case.  In this event, the federal plaintiff will forfeit the benefit of the valid and enforceable choice-of-law and forum selection provision.

*7.   The relative progress of the state and federal proceedings.*

Both parties agree that the two cases are in essentially the same position.  This factor therefore weighs against abstention.

*8.   The presence or absence of concurrent jurisdiction.*

This is a state law contract claim brought to federal court under diversity jurisdiction.  The presence of concurrent jurisdiction generally weighs in favor of abstention.  *See Bates v. Van Buren Township*, 122 Fed. Appx. 803, 807 (6th Cir. 2004).

**IV.   CONCLUSION**

Even if the balance was not already "heavily weighted in favor of the exercise of jurisdiction," *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16, the above factors would not weigh in favor of abstention.  Although there is a high risk of piecemeal litigation in this case, the Court will honor the forum selection and choice-of-law provisions to which the two sophisticated businesses agreed.

12

Accordingly, **IT IS ORDERED** that the defendant's motion to dismiss or to stay this case [Record No. 7] be, and the same hereby is, **DENIED**.

This the 6th day of June, 2007.



Signed By:

_**Joseph M. Hood**_

**United States District Judge**

13